

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*ex rel.* TODD DONALDSON,<br><br>Plaintiff,<br><br>vs.<br><br>NORTHROP GRUMMAN CORPORATION,<br><br>Defendant. | Civil Action No.<br><br>FALSE CLAIMS CASE, pursuant to 31 U.S.C. Sec. 3729<br><br>**FILED UNDER SEAL**<br>**Pursuant to 31 U.S.C. § 3730(b)(2)**<br><br>Case: 2:12-cv-00884<br>Assigned To : Nuffer, David<br>Assign. Date : 09/17/2012<br>Description: Qui Tam Donaldson |

## COMPLAINT

The United States of America, through *qui tam* Relator Todd Donaldson ("Relator"), brings this action under the federal False Claims Act, 31 U.S.C. §§ 3729, *et seq.* ("FCA"), against Defendant Northrop Grumman Corp. ("Northrop" or "Defendant"), and in support thereof, states as follows:

1. Northrop is a defense contractor that provides advanced weapons and navigation systems to the U.S. Government.

2. Relator is employed by Defendant in its Navigations Systems Division in the area of Salt Lake City, Utah, and has been employed by Defendant for over 25 years.

3. Defendant manufactures, *inter alia*, the LN-100 Inertial Navigation System/Global Positioning System (INS/GPS) navigation system. Because the LN-100 is absolutely essential to the proper functioning of the myriad weapons, vehicles, and other equipment in which it is installed, each LN-100 unit must undergo a battery of tests

called "acceptance test procedures," or ATP's. Passage of these ATP's is material to the Government's decision to pay for each LN-100 unit and for the equipment in which each LN-100 is installed.

4.  Unbeknownst to the Government, however, Northrop has been faking "pass" results for these ATP's. This has resulted in the Government paying for LN-100 units that do not function properly or as promised to work by Defendant.

5.  As described herein, these falsely-passed LN-100 units were submitted to the Government for purchase in violation of the FCA. At the times Defendant made, or caused to be made, each such claim for payment, Defendant knew that the claim was false and fraudulent. Defendant presented, or caused to be presented, each such claim for payment to the United States, knowing that it was false and fraudulent, in order to defraud the United States by causing them to pay these claims.

## I. JURISDICTION AND VENUE

6.  Pursuant to the *qui tam* provisions of the FCA, Relator brings this action on his own behalf and on behalf of the United States.

7.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 31 U.S.C. §§ 3732(a) and (b), which confer jurisdiction over actions brought under 31 U.S.C §§ 3729 and 3730.

8.  This Court has personal jurisdiction over Defendants and venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because Defendants are found, transact business, and committed violations of the FCA in this District.

9.  This action is not based upon prior public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, lawsuit or investigation; in a

Government Accountability Office or Auditor General's report, hearing, audit, or investigation; in news media; or in any other form as the term "publicly disclosed" is defined in 31 U.S.C. § 3730(e)(4)(A).

10. To the extent there has been a public disclosure unknown to Relator, he is an original source under 31 U.S.C. § 3730(e)(4). Relator has direct and independent knowledge of the information on which the allegations are based, and voluntarily provided this information to the United States before filing this action.

## II. PARTIES

11. Relator Donaldson is a citizen of the United States and a resident of the State of Utah. Relator is a resident of the State of Utah with his principal residence in the Salt Lake City metropolitan area. Relator has been employed by Defendant since 1986. Relator was a floor manager for over a decade and subsequently exercised management responsibilities in the LN-120G system before becoming third shift plant manager. Notwithstanding his excellent performance of these duties, Defendant demoted Relator as a result of his internal complaints regarding fake testing results on the LN-100 and other improper acts of Defendant.

12. Defendant is incorporated in the State of Delaware and its headquarters are in Falls Church, Virginia. Defendant sells the LN-100 to the U.S. Army, Navy, Marine Corps, Air Force, and Coast Guard, where it is incorporated into various aircraft, including helicopters and unmanned drones (including the Predator drone), missiles, submarines, and other vehicles.

13. The United States is the real party in interest in this case, ultimately paid the false claims alleged herein, and is entitled to the bulk of Relator's recovery.

### III. RELEVANT LAW

14. The FCA imposes liability on any person or entity who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval (31 U.S.C. § 3729(a)(1)(A)); knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim (§ 3729(a)(1)(B)); or conspires to commit such violations (§ 3729(a)(1)(C)).

15. The FCA defines the term "knowingly" to mean actual knowledge, deliberate ignorance of truth or falsity, or reckless disregard of truth or falsity, and no proof of specific intent to defraud is required (§ 3729(b)(1)) and defines "claim" to include any request or demand, whether under contract or otherwise, for money that is made to an agent of the United States or to a contractor if the money is to be spent to advance a government program or interest and the government provides or will reimburse any portion of the money (§ 3729(b)(2)).

### IV. DEFENDANTS' UNLAWFUL CONDUCT

16. Defendant sells delicate, advanced electronic systems to the government, including the LN-100 INS/GPS system. Each LN-100 unit sells for at least $60,000 and often sells for $100,000 or more.

17. Because of the complex nature of these systems, Defendant is required to perform various ATP's on every single LN-100 unit that it sells, and to provide the government only units that have passed each of these ATP's, including the "GPS Communication Test."

**GPS Communication Test**

18. The GPS Communication Test assesses GPS satellite continuity, *i.e.* whether the LN-100 unit is able to communicate properly with the GPS satellites, such that the LN-100-100 is thus able to know its exact position in three-dimensional space.

19. Satellite continuity is essential to the proper functioning of the LN-100 units because the inertial navigation component ("inertial unit") is imperfect. Even worse, because the inertial unit has no means of directly determining its position other than via GPS navigation (*i.e.*, determining its position by triangulating multiple satellite signals), the errors it makes accumulate in the system over time, such that its misreading of position becomes progressively worse.

20. While brief interruptions of satellite continuity are appropriate, the length of non-continuity that goes with a defective GPS unit (*i.e.*, a LN-100 unit that has failed the GPS Communication Test) presents a grave danger of erroneous navigation, leading to crashes and weapons failing to hit their targets.

21. Because the GPS Communication Test is somewhat time-consuming (it takes about 10 minutes to run) and the LN-100 units typically fail, Defendant has taken to having its technicians manually key in positive responses, such that the word "pass" appears on a print-out of the tests without the test actually being run. *See* attached Ex. A, wherein the GPS Communication test was supposedly started at 7:39:50 and passed four seconds later, at 7:39:54, when in fact no such test was ever actually run on this unit.

22. Defendant told his supervisor, manager Glenn Kemp, and human resources representative Ken Bishop about these problems, but technicians continue to manually insert spurious data causing a "pass" reading of the test on units that would fail

if tested properly. Knowing about these failures, Defendant then sells the defective units to the United States without disclosing the improper testing, in violation of the FCA.

**Improper Unit Calibration**

23. Because of variations in the magnetic and other properties of the LN-100 units, including gyroscopic and accelerometer biases, each configuration must be calibrated. The information from the correct calibration file then needs to entered into the device's memory using the CIRTS software that is built into each workstation.

24. However, Defendant has not been using the correct calibration files. The LN-100 units with the wrong calibration files are usually not detected in the ATP tests, but then the units fail when used by the U.S. armed forces in field conditions.

## COUNT ONE
## FEDERAL FALSE CLAIMS ACT

25. Relator incorporates by reference the allegations above.

26. This is a claim for treble damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729(a)(1)(A), 3729(a)(1)(B), and 3729(a)(1)(C).

27. As a result of the misconduct alleged herein, Defendants knowingly presented, or caused to be presented, to the United States a false or fraudulent claim for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

28. As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or a statement material to a false or fraudulent claim in violation of 31 U.S.C. § 3729(a)(1)(B).

29. As a result of the misconduct alleged herein, Defendants knowingly conspired to present, or cause to be presented, a false or fraudulent claim for payment or approval to the United States, and knowingly conspired to make, use, or caused to be

made or used, a false record or statement material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(C).

30. The United States, unaware of the false or fraudulent nature of these claims, paid such claims when they would not otherwise have been paid.

31. By reason of these payments, the United States has been damaged, and continues to be damaged, in a substantial amount.

## PRAYER FOR RELIEF

WHEREFORE, Relator respectfully prays that judgment be entered against the Defendants, ordering that:

A. Defendants cease and desist from violating the FCA;

B. Defendants pay $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461) for each violation of the FCA, plus three times the amount of damages that the United States has sustained because of Defendants' actions;

C. Relator be awarded the maximum relator's share allowed under the FCA;

D. Relator be awarded all costs of this action, including attorneys' fees and costs pursuant to the FCA;

E. Defendants be enjoined from concealing, removing, encumbering, or disposing of assets which may be required to pay the damages, penalties, fines, attorneys' fees, and costs awarded by the Court;

F. Defendants disgorge all sums by which they have been enriched unjustly by their wrongful conduct; and

G.    The United States and Relator be awarded such other relief as the Court deems just and proper.

## TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

DATED    September 6, 2012    Respectfully submitted,

/s/    Steve Russell

Steve Russell
**GRAND COUNTY LAW & JUSTICE CENTER**
729 Bartlett Circle
Moab, Utah 84532
(435) 259-7321

Brad N. Friedman
Alastair Findeis
**MILBERG LLP**
One Pennsylvania Plaza
New York, NY 10119-0165
(212) 594-5300

George Pressly
Konstantine Kyros
**KYROS & PRESSLY LLP**
60 State Street, Suite 700
Boston, Massachusetts 02109
(603) 320-7030